IRVING A. EVANS *vs.* BOSTON HEATING COMPANY & others.
NATIONAL TUBE WORKS COMPANY *vs.* SAME.
JOHN E. HOAR *vs.* SAME.

Suffolk.   December 4, 1891. — June 24, 1892.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Corporation — Authority to make Mortgage — Notice of Meeting — "Property."*

A corporation organized under the Pub. Sts. c. 106, § 11, for the purpose of supplying heat or warmth by the circulation of hot water through pipes to be laid in the public streets and connected by service pipes with the buildings to be warmed, has authority to make a mortgage of its property.

A notice, calling a meeting of the members of a corporation organized under the Pub. Sts. c. 106, § 11, stated the object to be "to consider the question of an issue of bonds of the company secured by a mortgage on its property." At the time of the notice, the corporation had a leasehold estate in a parcel of land, with an option to purchase it. After the directors had been authorized at the meeting to purchase the land and to mortgage "any or all of the rights, estate, property, and franchises" of the corporation, the land was conveyed to the corporation, the property was mortgaged, and the land was paid for out of the proceeds of the mortgage. *Held*, that the mortgage was authorized "at a meeting called for the purpose," as required by the Pub. Sts. c. 106, § 23; and that the fact, that between the time of the meeting and that of the execution of the mortgage the interest of the corporation in the land changed from an estate for years to a freehold estate, did not make it necessary to call a new meeting or to pass a new vote.

LATHROP, J.   These are three bills in equity, brought against the Boston Heating Company, the American Loan and Trust Company, and the members of the firm of Drexel, Morgan, and Company, to prevent the sale of the property of the Boston Heating Company under a power contained in a mortgage from that company to the American Loan and Trust Company, as trustee, to secure certain bonds of the mortgagor.   The bills also seek the appointment of a receiver to distribute the mortgaged property among the creditors and stockholders of the Boston Heating Company.   The bills in the first two cases are brought by unsecured simple-contract creditors of the first named defendant, and the third bill is brought by one of its stockholders.   Since the bills were filed, the property has been sold under the mortgage to persons affected with notice of the pendency of these suits.

The bonds secured by the mortgage, $750,000 in amount, were pledged by the Boston Heating Company to Drexel, Morgan, and Company to secure advances of $405,000. No part of these advances has been repaid. The Boston Heating Company has become hopelessly insolvent, and has abandoned its business. The mortgage has been foreclosed, and the bonds have been sold under the terms of the pledge, and they are now the property of Drexel, Morgan, and Company.

The two principal questions which have been argued before us are, first, whether the Boston Heating Company had power to make any mortgage; secondly, if it had such power, whether the mortgage given was authorized by a vote of the stockholders at a meeting called for that purpose.

1. The Boston Heating Company was organized on December 23, 1886, under the provisions of the Pub. Sts. c. 106, § 11, for the purpose of supplying heat or warmth by the circulation of hot water through pipes to be laid in the public streets, and connected by service pipes with the buildings to be warmed. Under the Pub. Sts. c. 106, § 75, it applied to the mayor and aldermen of the city of Boston, and obtained permission to lay its pipes, mains, and connections in and through the principal streets of a certain section of the city, and did in fact so lay and maintain them.

The act under which the Boston Heating Company was organized is a general act allowing nearly every kind of lawful business to be carried on by corporations formed in pursuance of its provisions, without the necessity of applying to the Legislature for a charter. Section 11 provides: "For the purpose of making and selling gas for light, or for the purpose of generating and furnishing steam or hot water for heating, cooking, and mechanical power in any city or town, or for either or both of said purposes, ten or more persons may associate themselves."

Section 23 of the act provides: "The business of every corporation which is subject to this chapter shall be managed and conducted by a president, board of directors, clerk, treasurer, and such other officers and agents as the corporation authorizes for that purpose. But no conveyance or mortgage of its real estate, or lease thereof for more than one year, shall be made,

unless authorized by a vote of the stockholders at a meeting called for the purpose."

The plaintiffs contend that the Boston Heating Company is a public or quasi public corporation, owing certain duties to the public, and that it therefore had no power to mortgage its property. The general power of a railroad company, which is undoubtedly a public or a quasi public corporation, to make a mortgage of its property, was much discussed by this court in *Commonwealth v. Smith*, 10 Allen, 448. It was there held that such a company, which was created for the sole purpose of constructing, owning, and managing a railroad, and authorized to take land under the power of eminent domain, could not make a mortgage in a manner impliedly prohibited by statute; and it was said that there were insuperable objections to such a corporation alienating its franchise, and conferring its powers and privileges upon another person or body, without authority other than that derived from the fact of its own incorporation. It was also said: " The power to mortgage can only be coextensive with the power to alienate absolutely, because every mortgage may become an absolute conveyance by foreclosure."

And in *Richardson v. Sibley*, 11 Allen, 65, it was held that, under the St. of 1864, c. 229, § 24, providing that " no street railway corporation shall sell or lease its road or property, unless authorized so to do by its charter, or by special act of the Legislature," such a corporation could not mortgage its property.

The doctrine of these cases does not apply to ordinary trading or manufacturing corporations. Thus, in *Treadwell v. Salisbury Manuf. Co.* 7 Gray, 393, it was held that the directors of a manufacturing corporation might, pursuant to the votes of a majority of its stockholders, though against the protest of the minority, sell the entire property of the corporation to a new corporation. The distinction between such corporations and " corporations established for objects quasi public, such as railway, canal, and turnpike corporations, to which the right of eminent domain and other large privileges are granted in order to enable them to accommodate the public," was pointed out on page 404 by Mr. Justice Bigelow. And in *Commonwealth v. Smith*, it was said by Mr. Justice Hoar: " The general power to dispose of and

alienate its property is also incidental to every corporation not restricted in this respect by express legislation, or by ' the purposes for which it is created, and the nature of the duties and liabilities imposed by its charter.' "   10 Allen, 455.

The policy of the Commonwealth in regard to railroads and street railways, as set forth in the cases above cited, has since been changed.   The St. of 1874, c. 372, § 49, provided: " Any railroad corporation, by vote at a meeting called for the purpose, may issue bonds, to provide means for funding its floating debt or for the payment of money borrowed for any lawful purpose."   This was amended by the St. of 1875, c. 58, § 1, by adding the words, " And may mortgage or pledge as security for the payment of such bonds any part or all of its road, equipment, or franchise, or any part or all of its property, real or personal."   These provisions are incorporated in the Pub. Sts. c. 112, § 62.   By the St. of 1889, c. 316, power is given to a street railway company, by a vote of a majority in interest of its stockholders, to authorize the issue of coupon or registered bonds, " secured by a mortgage of a part or of the whole of the railway of such company, and its equipments, franchise, and other property, real and personal."

By the St. of 1870, c. 224, the Legislature passed a general law authorizing the formation of various kinds of manufacturing and trading corporations, including, in § 5, those for the purpose of making and selling gas for light in a city or town.   Section 15 directs how the business of the company shall be managed, and concludes: " But no conveyance or mortgage of the real estate of the company, or lease thereof for more than one year, shall be made, unless authorized by a vote of the stockholders at a meeting called for the purpose."

By the St. of 1879, c. 202, § 1, companies were authorized ·to be formed, " For the purpose of making and selling gas for light, or for the purpose of generating and furnishing steam or hot water for heating, cooking, and mechanical power, in any city or town, or for either or both of said purposes," under the provisions of the St. of 1870, c. 224.   It is from these acts that §§ 11 and 23 of the Pub. Sts. c. 106 are derived.

  Without relying upon the remarks of Chief Justice B gelow, in *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, which

are strongly in favor of the view that a gas company is not a quasi public corporation, it seems to us very clear that the Legislature intended to treat a gas company or a heating company as an ordinary manufacturing corporation, and not as a quasi public corporation, so far as the power to make a mortgage is concerned; and that the peculiar language of the St. of 1870, c. 224, § 15, and of the Pub. Sts. c. 106, § 23, is due to the fact that, as a manufacturing corporation, it could make a mortgage without special authority. We are of opinion, therefore, that the Boston Heating Company had authority to make a mortgage.

2. The next question is, whether the mortgage was authorized " at a meeting called for the purpose," as required by the Pub. Sts. c. 106, § 23. The notice of the meeting stated the object to be " to consider the question of an issue of bonds of the company secured by a mortgage of its property." It is objected that this did not indicate that final action was to be taken. The object of a call is undoubtedly to give notice of the business which is to be transacted at the meeting. The notice in this case was issued to members of a business corporation; and it could hardly have been understood by them as calling a meeting simply for the purpose of debate; and we are of opinion that this is not its fair intendment, and that action under it might be taken. At the time of the notice the corporation had a leasehold estate in a parcel of land, with an option to purchase it. We see no reason why this was not " property " within the meaning of the notice, nor why it was not sufficiently indicated by the notice.

3. After the directors had been authorized at the meeting to purchase the land in which the corporation then had a leasehold estate, and to mortgage " any or all of the rights, estate, property, and franchises " of the corporation, the land was conveyed to the corporation, the property was mortgaged, and the land was paid for out of the proceeds of the mortgage. We do not think that the fact, that between the time of the meeting and that of the execution of the mortgage the interest of the corporation in the land changed from an estate for years to a freehold estate, made it necessary to call a new meeting or to pass a new vote. The notice of the meeting gave warning that a mortgage of the property of the company was to be considered. The votes passed at

the meeting, by fair intendment, contemplated and authorized the doing of what was in fact done.

*Bills dismissed.*

*J. C. Coombs,* for Evans, and the National Tube Works Company.

*W. H. Dunbar,* for Hoar.

*G. Putnam & W. W. Gooch,* for the defendants.