# INTER-ISLAND TELEGRAPH COMPANY, LIMITED, HENRY WATERHOUSE TRUST COMPANY, LIMITED, NELLIE D. CROSS *v.* LILIUOKALANI, A. M. BROWN, HIGH SHERIFF OF THE TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED FEBRUARY 21, 1904.        DECIDED APRIL 6, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE ROBINSON IN PLACE OF WILDER, J.

WIRELESS TELEGRAPH COMPANY—*property not exempt from execution for debt—Act 75, Laws of 1903, imposes on that company no obligation to perform public service.*

The property of the Inter-Island Telegraph Company is not exempt from execution on a judgment against it for debt by reason of its being a quasi public corporation under obligation to perform service for the public, or by reason of anything contained in Act 75 of the Laws of 1903 providing a monthly subsidy for the company.

ID., MORTGAGED CHATTELS—*levy of execution on—unnecessary to levy upon the whole.*

A demurrer to a mortgagee's bill for an injunction against a sale on execution of mortgaged chattels is sustained on the ground that if execution may be levied on such chattels the mortgagee has an adequate remedy at law. It is unnecessary that all of the mortgaged property (if any) be sold. If the interests of all concerned, including the mortgagees, would be injuriously affected by unnecessary levy and sale an action for malicious and vexatious use of process would give a remedy.

OPINION OF THE COURT BY HARTWELL, J.

The defendant Liliuokalani, having taken out execution on a judgment for $268.75 against the Inter-Island Telegraph Company, Ltd., in an action before the district magistrate of Honolulu, the high sheriff levied on certain instruments used in that company's office in Honolulu and required for operating its system, namely, "a key, sounder and inker." The Telegraph Company thereupon joined with the Waterhouse Trust Co. and Cross, mortgagees of the Telegraph Company's property, in a bill praying for a temporary injunction restraining the defendants from "further interference with the instruments or property of the petitioners, or either of them, employed in the operation of the telegraph system for said Inter-Island Telegraph Company, Ltd., or connected therewith, or necessary or used in connection with the same," and that the defendants "be enjoined permanently from interfering with said instruments or with the operation of the said company or with any of the property of the petitioners, or either of them, used in connection with the operation of said system, or convenient for the same." The defendants demurred to the bill for misjoinder of plaintiffs and want of equity. The circuit judge overruled the demurrer, allowing an appeal to this court. The Telegraph Company bases its claim that its property is exempt from execution for its debts on the grounds that it is engaged in a governmental service, a common carrier, engaged in a service for the public in which the public have an interest, basing this claim mainly upon the provisions of act 75 of the Laws of 1903. The correctness of this claim depends upon one or the other of the following considerations: That this company is a quasi public corporation, the property of which cannot be levied upon because "affected with a public interest or held charged with a trust for public purposes;" (6 Thompson on Corp., Sec. 7797), or because the corporation "is charged with public duties and is in the exercise of its franchises and the performance of such duties," and that the property "is essen-

tial to enable it to discharge its franchises and perform its duties to the public." 3 Clark and Marshall on Corp., p. 2340. This is "on consideration of public policy." Ib. 2341. The doctrine does not apply to property of a purely private corporation "which owes no duties to the public." Ib. 2342, citing 169 Pa. St. 626. "The exemption from levy is maintainable only upon the theory that the corporation is created for the furtherance of public purposes of such importance as is essential to effect these purposes." Ib. 2343, citing 8 Humphreys 103. One test of a quasi public corporation is whether it is under obligation to perform duties, a question often tested in mandamus proceedings. Mandamus to compel such duties will lie where the charter of a corporation or the statute in force "imposes a specific duty either in terms or by a fair and reasonable construction and implication. * * * The writ will not be awarded, unless the right sought to be enforced is a complete and perfect legal right, and, of course, the reciprocal obligation a complete and perfect legal obligation." 6 Thomp., Sec. 7826. "The right and obligation are necessarily correlative; if there be no obligation, there is no right." *State v. So. Minn. R. Co.,* 18 Minn. 21. "In respect of corporations created for public objects, such as railway, turnpike and canal companies, the view is that property belonging to such corporations, which is indispensable to the exercise of the franchises conferred upon them and to the performance of the correlative duties which they have assumed in behalf of the public, is not vendible in execution for the satisfaction of their debts." Thomp., Sec. 7848. "This exemption is founded alone on the consideration that the corporation has public duties to perform, and that it would be disabled from performing them by the deprivation of the property thus exempted." Ib. Sec. 7855, citing *Foster v. Fowler,* 60 Pa. St. 27. The services rendered by the Chicago Gas Co. "is the exercise of a franchise belonging to the state. Services rendered and to be rendered for such grant are of a public nature, and prevents the company by contract

with another company from disabling itself from the performance of its public duty." *Chicago Gas Co. v. People's Gas Co.,* 121 Ill. 530, citing *Louisville Gas Co. v. Citizen's Gas Co.,* 115 U. S. 683. In the latter case the court says in substance that the business is not like that of ordinary corporations engaged in making articles that may be as indispensable as are gas lights, but supplying gas to the public is "a matter of which the public may assume control and for such public service may grant exclusive privileges." "Inasmuch, therefore, as by the terms of its charter the appellant owed a duty to the public, it could not avoid the performance of that duty by a contract with another corporation." Ib. 540. Gas, water, electric light, telegraph and telephone and street railway companies "and all similar corporations which have obtained the right to use the public streets for the erection or extension of their works" are bound to "serve the public faithfully and impartially and at reasonable rates, and this is a duty the performance of which may be enforced by the courts." *Gas Light Co. v. United Gas Co.,* 85 Me. 537. A corporation organized to supply heat by circulation of hot water through pipes laid in the public streets and connected with buildings may mortgage its property. The doctrine in favor of railroads "does not apply to ordinary trading or manufacturing corporations," the court distinguishing between such corporations and those which are established for objects quasi public, "such as railway, canal and turnpike corporations to which the right of eminent domain and for which large privileges are granted in order to enable them to accommodate the public." *Evans v. Boston Heating Co.,* 157 Mass. 37. Gas companies are not exempt from taxation as a public corporation on the ground that "no public duty is imposed upon them, nor are they charged with any public trust. They are authorized to make and distribute gas for their own profit and gain only. They are not bound to sell and dispose of it to any one, either for public or private use." *Com. v. Lowell Gas Light Co.,* 1 Allen 75. So of a company

authorized to transact a general storage and elevator business, (*Girard Co. v. Foundry Co.,* 105 Pa. 248), in which the court says of a company devoting its property to a use in which the public has an interest, "But it certainly does not follow that because of this public interest the property of a private person is made public property or even quasi public property, or that it is therefore exempt from ordinary execution process." *Hunt v. Memphis Gas Light Co.,* 31 S. W. Rep. 1006 (Tenn.), held that as the charter of the company does not confer a right of eminent domain or exclusive privilege it can mortgage its property.

The principle to be deduced from the cases, and which rests on right reason, is that it is not sufficient to exempt the property of a corporation from execution for its debts that it receive a government subsidy; or was formed for performing service of a public nature or in which the public, whether directly or indirectly, is interested; or is engaged to perform and is performing service for the government or heads of departments. There should be some duty imposed on the corporation, either by statute or law, or by its engagements, requiring its performance of public service, or some grant of a public franchise authorizing the taking of private property for public use whereby property taken, as well as other property required for use of that which is taken, is stamped with a public trust. The statement in Morawetz (Priv. Corp., Sec. 1125), that "if a corporation has received aid from the government for a public trust, any property of the company which is necessary to enable it to accomplish this purpose is impressed with a trust in favor of the public and cannot be seized or sold by creditors of the company under an execution" does not appear to be sustained by the cases cited in its support nor by sound principle. *Cue v. Tide Water Canal Co.,* 24 How. 257, 16 L. E. 635, is cited for that statement, as well as in plaintiff's brief, as a leading case. Cue, the appellant, having furnished work and materials for construction of the tide water canal, recovered judgment

against the company on which execution was issued for sale of the company's property in Maryland. A bill was brought to enjoin the sale. Levy was made on the locks of the canal, its toll house and lands surrounding necessary to the working of the canal. The court, Taney, C. J., after observing that the canal was "a great thoroughfare of trade through which a large portion of the vast region of country bordering on the Susquehanna river usually passes in order to reach tide water and a market," said, "The whole value of it to the stockholders consists in a franchise of taking toll on boats passing through it according to the rates granted and prescribed *in the act of assembly which created the corporation.* The property seized by the marshal is of itself of scarcely any value apart from the franchise of taking toll; * * * but would yet, as it is essential to the working of the canal, render the property of the company in the franchises now so valuable and productive utterly valueless;" further remarking that this franchise, "being an incorporeal hereditament cannot upon the settled principles of the common law be seized under a fieri facias," and that no Maryland statute changed the common law in this respect; also that it appeared by the marshal's return that the franchise was not seized, and therefore the result of a sale "would have been to destroy utterly the value of the property owned by the company, while the creditor himself would most probably realize scarcely anything from these useless canal locks and lots adjoining them;" that the record showed other creditors to a large amount, and that it would be against equity "to allow a single creditor to destroy a fund to which other creditors had a right to look for payment" and destroy the value of the property "by dissevering from the franchise property which was essential to its useful existence," and finally holding that if the appellant had a right to enforce sale of all the property, including the franchise (on which the court declined to express any opinion), his remedy was in chancery "where the rights and priorities of all the creditors may be considered and protected

and the property of the corporation disposed of to the best advantage."

The claim of this Telegraph Company is that it is in the position of telegraph companies under act of Congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes." This act gives companies the right to construct and operate their lines "through and over any portion of the public domain" and "over and along any of the military or post roads of the United States," with "the right to take and use from such public lands the necessary stone, timber and other materials for its posts," etc., and provides that such rights and privileges "shall not be transferred by any company acting under this act to any other corporation, association or person." It was stated in *Pensacola Tel Co. v. W. U. Tel. Co.,* 96 U. S. 1, that the telegraph was "an instrument of commerce * .* * subject to the regulating power of Congress in respect to their foreign and interstate business and that such a company occupies the same relation to commerce as a carrier of messages as a railroad company does as a carrier of goods." *Ratterman v. W. U. Tel. Co.,* 127 U. S. 425, which decides upon the validity of a state tax upon receipts partly derived from interstate commerce and partly from commerce within the state. No peculiar franchise is granted to this Telegraph Company by its formation as a corporation under the general law or by the provisions of act 75, Laws of 1903.

In *Foster v. Fowler,* ubi supra, also cited for the above statement of Morawetz, a water company was organized under a special act which authorized it to convey water "by pipes or otherwise through public or private grounds," with further powers of appropriating land for buildings, reservoirs, etc. The case was decided on the ground that the privileges were "conferred with a view to the public use and accommodation" that such corporations "cannot voluntarily deprive themselves of the lands and real estate and franchises which are necessary for that purpose," and that such privileges cannot be taken on

APRIL, 1905.

execution "because to permit it would defeat the whole object of the charter by taking the improvements out of the hands of the corporation and destroying their use and benefit." The other cases cited, also *Overton Bridge Co. v. Means,* 33 Neb 853, cited in plaintiff's brief, decided upon similar principles are inapplicable to the present case.

Act 75, Laws of 1903, in its preamble is expressed as "An act to provide for the prompt and efficient transmission of messages by means of wireless telegraph," and one of its recitals is that "it is of great benefit to the administration of the government of the Territory of Hawaii, and to the people generally of said Territory, that prompt, efficient and cheap means of telegraphic communication between the different islands of the group be established and maintained." The act provides (section 1) that the company shall construct a system of wireless telegraphy between Kauai and Oahu within three months; (section 2) that within four months it shall make some changes in the location of its present stations on the islands of Molokai, Maui and Hawaii as will insure more efficient service," the changes to be approved by the superintendent of public works; (section 3) that within six months the company shall construct a land telegraph from its wireless station on the island of Hawaii through certain districts on that island; (section 4) that its tariff shall not exceed ten cents a word with a minimum toll of not over one dollar for any message. The act further provides as follows:

"Section 5. That the Inter-Island Telegraph Company, Ltd., shall receive and transmit all messages pertaining to governmental and official business of the different departments of the Territory of Hawaii free of charge."

"Section 6. That the Territory of Hawaii shall pay to the Inter-Island Telegraph Company, Ltd., a subsidy of twelve thousand ($12,000) dollars each year for the period of two years from the date of the completion of the installations and constructions provided for in sections 1, 2 and 3 of this act, such subsidy shall be payable in equal monthly installments of one thousand ($1,000) dollars, and it shall be the duty of the

auditor of the Territory of Hawaii to draw a warrant on the treasurer of the Territory of Hawaii, payable to the Inter-Island Telegraph Company, Ltd., on receipt of a voucher signed by the Inter-Island Telegraph Company, Ltd., and approved by the superintendent of public works, showing that the provisions of this act have been complied with by the Inter-Island Telegraph Company, Ltd."

There is nothing in the act which imposes on the Telegraph Company any obligation or which requires it to assume the obligation of transmitting messages for the public or (except as a condition of its receiving payment of a monthly subsidy of one thousand dollars) which requires the company to transmit messages free of charge for the different departments of the Territory. The company, therefore, cannot claim exemption from execution for debt on the ground that its obligatory functions as a quasi public corporation or a government agent would thereby be interfered with or its franchise made useless.

It is claimed by the plaintiffs that mortgaged chattels are not leviable, or if so, they must be sold as a whole, not by selecting essential parts. The right of a judgment creditor to levy execution upon mortgaged chattels is discussed in the following cases:

"While the property remained in the possession of the mortgagor and the condition of the mortgage unbroken, he had an interest subject to his control and disposition. He could sell and deliver such title as remained to him. The purchaser would take it in case of a sale subject to the lien of the mortgage whether its existence was ascertained by the purchaser or not, or whether the mortgagor mentioned or omitted to mention it. It follows of course that the interest of the mortgagor was equally subject to levy and sale by an execution creditor and the purchaser would obtain at such sale the same title as that of which the mortgagor was possessed and no more, no less." *Hamill v. Gillespie,* 48 N. Y. 559. Denio, J.: "I consider it well settled that chattels which have been mortgaged may, notwithstanding, be seized upon execution against the mortgagor, where he is in possession, and at the time of the seizure is entitled to the possession for a definite period against the mortgagee. This was assumed to be the law in *Mattison v. Baucus,*

in this court (1 Comst. 295); and the principle has been repeatedly recognized by the former and the present supreme court and the late court for the correction of errors, and has never, so far as I know, been denied by any court in this state." *Hull v. Carnley,* 11 N. Y. 505.

The law on this subject is far from being settled, but we think the above cited New York cases correctly state the rule.

It was held in *Nott v. Burgess,* 5 Haw. 420, that a mortgagee of chattels is entitled t othe possession thereof immediately upon the execution of the mortgage, and also that he has an adequate remedy at law if the mortgagor undertakes to dispose of the chattels for the benefit of his creditors. In the present case it appears that the condition of the Cross mortgage was broken, so that the mortgagee was by the terms of the mortgage entitled to the possession of the mortgaged property. It does not appear whether the condition of the Waterhouse Trust Company mortgage was broken or not. There is a provision in that mortgage in connection with the power of sale that upon default in payment of the note or interest the mortgagee may take possession and sell, but there is no provision that until default the mortgagor may retain possession. Probably the mortgage was drawn on the theory, which is contrary to the rule in *Nott v. Burgess,* that the mortgagor until default could remain in possession. In any aspect of the case we regard the plaintiff's remedy at law as adequate on the authority of *Nott v. Burgess.*

The plaintiff's claim that the mortgaged property, if levied upon and sold at all must be sold as a whole, and not in separate pieces, is based upon the claim that otherwise the interests of the mortgagees may be jeopardized; but the interests of all concerned would be affected injuriously by an unnecessary and superfluous levy and sale of more than is required to satisfy the execution, while for malicious and vexatious use of process the law gives a remedy.

The decree appealed from is reversed and the demurrer is sustained.

*Castle & Withington* for plaintiffs.
*Robertson & Wilder* for defendants.