CHARLES G. WELD *vs.* BOARD OF GAS AND ELECTRIC LIGHT COMMISSIONERS.

SAME *vs.* EDISON ELECTRIC ILLUMINATING COMPANY.

Suffolk.   December 12, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Public Service Corporation.   Gas and Electric Light Company.   Electric Light Company.*

A public service corporation cannot sell its property and franchises to another corporation in such a way as to part with the power to perform its public duties.

In regard to gas and electric lighting companies this Commonwealth has adopted legislative regulation and control rather than the encouragement of competition for protection against the evil effects of a monopoly.

An electric light or gas company, which has a franchise covering a city or town in which another company has a like franchise, if the public interest is not affected injuriously thereby, lawfully can arrange with the other company to extend its lines into one part of new territory that is being developed and to leave the other company to extend its lines into another part of such territory, so that neither company will duplicate lines in streets where the other is serving the public, this being a detail of administration which is not an illegal parting with a portion of its franchise; and such an arrangement may be upheld although certain streets in which both companies previously have run lines are included in the arrangement.

KNOWLTON, C. J.   The petitioner is the owner of a house, on Bay State Road in Boston, which is equipped with wires for lighting by electricity, and connections with the electric wires of the respondent in the second suit, and also with those formerly of the Brookline Gas Company which are now owned and controlled by its successor, the Boston Consolidated Gas Company. Electricity for lighting the house was formerly furnished by this respondent, but in the year 1902 an arrangement was made between the respondent and the Brookline Gas Company, whereby the latter company became the purchaser of the respondent's conduits and wires and undertook to do all the business of electric lighting on the westerly side of a line running from the Charles River through Deerfield Street, Brookline Avenue and Chelsea Street to the Muddy River, and the respondent became the owner of the conduits and wires of the Brookline Gas Company and undertook to do the business of electric lighting on the

easterly side of this line. The respondent's conduits and wires on Bay State Road, connecting with the petitioner's house, were on the westerly side of this line, and were then disconnected from its works, except that a single wire was left to furnish a direct current for the operation of an electric motor in the petitioner's house. Since October 28, 1903, when he ceased to be supplied by the respondent, the petitioner has been furnished with sufficient electricity for the purpose of lighting his house, either by the Brookline Gas Company or its successor, the Boston Consolidated Gas Company, and he has not made and does not now make any complaint as to the sufficiency or quality of the service, or the price charged therefor.

The petitioner filed with the board of gas and electric light commissioners a petition, under the R. L. c. 121, § 33, as amended by the St. 1903, c. 164, for an order that the respondent be directed and required to supply him with electric light at his house, upon such terms and conditions as might be found legal and reasonable after a hearing. This petition was dismissed by the board, in the exercise of its discretion. The first of the cases before us is a petition for a writ of certiorari to obtain a reversal of this order.

The second case is a petition for a writ of mandamus to command the respondent to restore its service to the petitioner upon such terms as may be legal and reasonable.*

The respondent is a corporation, organized to exercise a public franchise of importance to the community in which it conducts its business. It is its duty to exercise this franchise for the benefit of the public, with a reasonable regard for the rights of individuals who desire to be served, and without discrimination between them. It cannot relieve itself from this duty so long as it retains its charter. It enjoys public rights in the streets, which are derived from the Commonwealth, through action of the board of aldermen under authority of the Legislature. It is a quasi public corporation, and as such it owes duties to the public. *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650. *Coy* v. *Indianapolis Gas Co.* 146 Ind. 655, 659. *Williams*

---

* Both cases were reported and reserved by *Braley*, J., for determination by the full court.

v. *Mutual Gas Co.* 52 Mich. 499, 501. *Shepard* v. *Milwaukee Gas Light Co.* 6 Wis. 539. *Gas Light Co. of Baltimore* v. *Colliday*, 25 Md. 1.

Without legislative authority it cannot sell its property and franchise to another party, in such a.way as to take away its power to perform its public duties. *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24, and cases cited. *Brunswick Gas Light Co.* v. *United Gas, Fuel & Light Co.* 85 Maine, 532. *Gibbs* v. *Baltimore Gas Co.* 130 U. S. 396. *Thomas* v. *Railroad Co.* 101 U. S. 71, 83. *Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 Ill. 530. *South Chicago Railway* v. *Calumet Street Railway*, 171 Ill. 391. *State* v. *Hartford & New Haven Railroad*, 29 Conn. 538.

The fundamental principles, relied on by the petitioner as applicable to corporations of this general class, are well established. But the laws of this Commonwealth in regard to gas and electric lighting companies and the facts of this case give rise to considerations very different from those which induced the decisions in many of the cases above cited. In the first place, in reference to this department of public service, we have adopted, in this State, legislative regulation and control as our reliance against the evil effects of monopoly, rather than competitive action between two or more corporations, where such competition will greatly increase the aggregate cost of supplying the needs of the public, and perhaps cause other serious inconveniences. Under the R. L. c. 121, §§ 1, 5, 6, 8, 14, 15, 26, 34 and 35, the board of gas and electric light commissioners are given supervision and control over all companies furnishing gas or electricity to the public for lighting, and, among other things, they may order, under § 34, any reduction in the price of gas or electric light, or improvement in the quality thereof. Under §§ 8 and 9 the courts have jurisdiction to enforce all lawful orders of the board, and all provisions of law relative to such companies. The State, through the regularly constituted authorities, has taken complete control of these corporations so far as is necessary to prevent the abuses of monopoly. Our statutes are founded on the assumption that, to have two or more competing companies running lines of gas pipe and conduits for electric wires through the same street would often greatly increase the necessary cost of furnish-

ing light, as well as cause great inconvenience to the public and to individuals from the unnecessary digging up of the streets from time to time, and the interference with pavements, street railway tracks, water pipes and other structures. See § 26, above quoted. Also *Attorney General* v. *Walworth Light & Power Co.* 157 Mass. 86. In reference to some kinds of public service, and under some conditions, it is thought by many that regulation by the State is better than competition.

The answer to the petition for a writ of certiorari sets forth the decision of the board upon the original petition, as it appears of record. This answer must be taken as true. The board has found that this portion of Boston, which was formerly Brookline, is at present, in large part, undeveloped, and is destined to an extensive development in the near future, and is to be an important territory for the sale of electricity. After referring to the fact that a tentative understanding between two companies, having equal rights and substantially equal facilities, relative to a division of the undeveloped territory in making future extensions of their systems, would be in harmony with the established legislative policy of the Commonwealth in regard to gas and electric companies, the board says: " A careful consideration of all the circumstances of the case does not disclose any public interest requiring an order in favor of the petitioner, and does suggest on the other hand some positive disadvantages to the public interest if such order is made. While these disadvantages may not seem serious at the present time, their importance will become more and more apparent as the territory is developed."

The petitioner is seeking the enforcement of an alleged public right. His private interest is not independent of the rights of the public, but he claims only through the public, and as one of the citizens who are to be served by the respondent. See *Brewster* v. *Sherman*, 195 Mass. 222. The facts show that he has suffered nothing in the sufficiency or quality of the service, or the price charged for it. So far as appears, he is not likely to suffer in the future. Indeed, the statutes above referred to are intended to give him perfect protection.

We come, therefore, to the question whether, under our laws, an electric light or gas company, having a franchise covering a city or town in which another company has a like franchise,

cannot, in conducting its business, if the public interest is not thereby affected, arrange with the other company to extend its lines into one part of the territory that is being newly developed, and leave the other company to extend its lines into another part of the territory, so that neither company will duplicate lines in streets where the other is serving the public.   It seems to us that, under such conditions, this is a detail of administration which is not in violation of law.   In other words, we think that a corporation making such an arrangement is not subject to prosecution under a writ of mandamus, for a failure properly to exercise its corporate franchise.   We are not called upon to determine in this case whether such an arrangement could be availed of as a justification, if, unexpectedly, it should turn out that the public interest was injuriously affected.   We do not suggest that a corporation can relieve itself of the performance of its duties to the public under its franchise, but only that details of administration, not inconsistent with the legislative policy of the Commonwealth, may be left to the corporation, so long as adequate provision is made for the public.   We go no further than to say that, under conditions like the present, the public has no grievance which the court will recognize.

We do not think it fatal to the defence that the arrangement before us includes, with the undeveloped territory into which electric lighting is expected to be extended, a street or streets in which both companies had run wires previously.   The same principle applies in both cases.   In neither are consumers left at the mercy of a monopoly.

The principal reasons which moved the courts to their decisions in *Portland Natural Gas Co.* v. *State*, 135 Ind. 54, in *Brunswick Gas Light Co.* v. *United Gas, Fuel & Light Co.* 85 Maine, 532, and in some of the other cases above cited, are entirely wanting in the present case.

In *Commonwealth* v. *Fitchburg Railroad*, 12 Gray, 180, and in *People* v. *Rome, Watertown & Ogdensburg Railroad*, 103 N. Y. 95, a railroad corporation was allowed to discontinue a part of the public service that previously had been rendered under its franchise.   It was justified on the ground that the public interest did not longer require the service.   The principle which lies at the foundation of these decisions is equally applicable to the

present case. See also *Crane* v. *Chicago & Northwestern Railway*, 74 Iowa, 330; *San Antonio Street Railway* v. *State*, 90 Texas, 520; *Bullard* v. *American Express Co.* 107 Mich. 695.

In each case the entry must be

*Petition dismissed.*

*F. H. Nash*, for the petitioner.

*D. Malone*, Attorney General, *& F. B. Greenhalge*, Assistant Attorney General, for the Board of Gas and Electric Light Commissioners.

*E. W. Burdett*, (*J. H. Knight* with him,) for the Edison Electric Illuminating Company.