ATTORNEY GENERAL *vs.* HAVERHILL GAS LIGHT COMPANY.

Suffolk.    January 24, 1913. — May 26, 1913.*

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Gas Company.    Public Service Corporation.    Corporation,* For public service.
*Constitutional Law.    Words,* "Franchise."

A corporation, created by or organized under the laws of this Commonwealth for
the purpose of manufacturing and selling gas for light and heat in a certain
city, is a public service corporation, and, except by legislative authority, cannot
part with its franchise and property in such a way as to deprive itself of the
power to perform its public duties.

As was pointed out in *Weld* v. *Edison Electric Illuminating Co.* 197 Mass. 556, the
policy which has been developed in Massachusetts respecting the furnishing of
artificial light is that of a regulated monopoly. By RUGG, C. J.

In R. L. c. 121, § 13, which provides that a gas company "shall not transfer its
franchise . . . without the authority of the General Court," the word "fran-
chise " means the right to manufacture and supply gas for a particular locality
and to exercise the special rights and privileges in the streets and elsewhere
which are essential to a gas company for the proper performance of its public
duty and for the private gain without which it could not exist successfully.

Under R. L. c. 121, § 13, which provides that a gas company "shall not transfer
its franchise . . . without the authority of the General Court," a sale by a gas
company, authorized by its charter to manufacture and sell gas in a certain
city, of all its physical property, including its mains and pipes in public ways,
to a corporation organized for the purpose of taking over such property under
a general scheme for improving the facilities for providing gas for that city,
with the understanding that the selling corporation shall surrender its charter
after the sale, is an attempted evasion of the statute, and is of no effect without
legislative authority.

R. L. c. 121, § 13, re-enacting in substance St. 1886, c. 346, § 4, and providing that
"a gas company shall not transfer its franchise, lease its works or contract with
any person, association or corporation to carry on its works, without the au-
thority of the General Court," is constitutional.

INFORMATION IN EQUITY, filed in the Supreme Judicial Court on
July 8, 1912, under St. 1906, c. 372, by the Attorney General at
the relation of the commissioner of corporations, to restrain the
Haverhill Gas Light Company, a corporation created by St. 1853,
c. 8, amended by St. 1853, c. 163, from selling and transferring its
franchise and property to the Haverhill Gas Company, a cor-

* This case is printed out of its order by reason of a temporary withdrawal
of the opinion.

poration recently organized under the general laws of this Commonwealth.

The case came on to be heard before *Morton*, J., who reserved it for determination by the full court.

*J. M. Swift*, Attorney General, (*F. B. Greenhalge*, Assistant Attorney General with him,) for the plaintiff.

*B. E. Eames*, (*J. J. Winn & W. C. Rice* with him,) for the defendant.

RUGG, C. J.    This is an information in equity brought under St. 1906, c. 372, which authorizes this court at the relation of the Attorney General to restrain any corporation "from assuming or exercising any franchise or privilege or transacting any kind of business not authorized by the charter of such corporation and the laws of this Commonwealth." The bill alleges in substance, that the defendant, having for a long time been engaged in the business of manufacturing and selling gas for light and heat in the city of Haverhill, is about to sell "all of its franchises and property in the said city, including all of its mains, pipes and other appurtenances necessary for or incidental to the manufacture and sale of gas for light and heat, without authority from the General Court and without authority of any law," and that thereby it will become unable to continue its business of furnishing gas for light and heat. The answer and certain agreed facts admit the purpose of the defendant to dispose of all its physical property, including its mains and pipes in the public ways of Haverhill to the Haverhill Gas Company, a corporation recently organized under the laws of the Commonwealth, for the purpose of taking over the physical properties of the defendant as a part of a general scheme for improving the facilities for providing gas in the city of Haverhill. The point at issue is, whether the defendant has a right under the general law without special authority from the Legislature to sell its physical properties, including its pipes and mains in streets necessary to the carrying on of its business, and thus deprive itself of its facilities for doing business. The defendant does not undertake directly to transfer its right to be a corporation, (but proposes to surrender it) nor its licenses and permits granted by the municipal authorities to lay its pipes in public ways. It is contended that the new corporation has licenses and permits to act in its own right in maintaining such pipes to be sold

to it. There are numerous statements in the answer respecting contracts and alleged grants from the city council of Haverhill to the Haverhill Gas Company. It is not necessary to describe these in detail, nor to inquire whether the alleged permits to lay pipes granted to the Haverhill Gas Company are valid. See *Metropolitan Home Telephone Co.* v. *Emerson,* 202 Mass. 402. Sufficient appears upon the record to warrant the assumption that the Haverhill Gas Company would be able to furnish gas in sufficient quantities and of required quality if given the opportunity.

In *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556, it was said by the court speaking through Chief Justice Knowlton, referring to a gas and electric light company:

"The respondent is a corporation, organized to exercise a public franchise of importance to the community in which it conducts its business. It is its duty to exercise this franchise for the benefit of the public, with a reasonable regard for the rights of individuals who desire to be served, and without discrimination between them. It cannot relieve itself from this duty so long as it retains its charter. It enjoys public rights in the streets, which are derived from the Commonwealth, through action of the board of aldermen under authority of the Legislature. It is a *quasi* public corporation, and as such it owes duties to the public. *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650. *Coy* v. *Indianapolis Gas Co.* 146 Ind. 655, 659. *Williams* v. *Mutual Gas Co.* 52 Mich. 499, 501. *Shepard* v. *Milwaukee Gas Light Co.* 6 Wis. 539. *Gas-Light Co. of Baltimore* v. *Colliday,* 25 Md. 1. Without legislative authority it cannot sell its property and franchise to another party, in such a way as to take away its power to perform its public duties. *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24, and cases cited. *Brunswick Gas Light Co.* v. *United Gas, Fuel & Light Co.* 85 Maine, 532. *Gibbs* v. *Baltimore Gas Co.* 130 U. S. 396. *Thomas* v. *Railroad Co.* 101 U. S. 71, 83. *Chicago Gas Light & Coke Co.* v. *People's Gas Light & Coke Co.* 121 Ill. 530. *South Chicago Railway* v. *Calumet Electric Street Railway,* 171 Ill. 391. *State* v. *Hartford & New Haven Railroad,* 29 Conn. 538."

This is a succinct, clear and comprehensive statement of the law. It rests upon fundamental conceptions of the character of service rendered ,by gas companies and of the nature of the in-

strumentalities utilized by them in performing their duties. The defendant is empowered by its charter (St. 1853, cc. 8, 163) among other matters to lay and repair pipes in the streets and highways of what is now the city of Haverhill, when granted a license by municipal officers. The authority to use the public ways is, according to common knowledge, one of the important and essential privileges conferred upon the defendant. Its ability to carry on business rests on the power to use exclusively a part of the public ways for the purpose of laying its pipes and distributing its product. The right acquired by the public in laying out a highway is an easement for public travel. It would be incompatible with the right obtained by the public through the laying out of a highway to devote it in whole or in part to strictly private uses. *Commonwealth* v. *Morrison,* 197 Mass. 199. It is only the element of service rendered to the public by a gas company which warrants the laying of its pipes in highways. It has been said repeatedly in decisions of this court that the paramount right acquired by the public in land taken for highways includes the laying of gas pipes. The charter authority of the defendant to lay its pipes in public ways, although not in express terms made dependent upon such reasonable limitations and regulations as the Legislature might impose from time to time, was not absolute and unqualified in character, and was subject by implication to the general power of the Legislature over highways. It would be within the power of the Legislature to pass any reasonable restrictions at any time touching the use of the highway. *Fair Haven & Westville Railroad* v. *New Haven,* 203 U. S. 379, 390. This includes proper regulations of the conditions under which a gas company may use highways. The language in *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, which seems to look in a different direction, occurs in the decision of a tax case and was directed to the argument that a gas light company was a corporation of such a character that it was exempt from local taxation. It was quoted at length in *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, 497, to the same point. It must be read in the light of the subject as to which it was used. So read there is nothing in it inconsistent with the proposition that the privilege of appropriating exclusively a portion of the highway involves and is predicated upon a kind of public service.

It is plain and it has been the declared law of the Commonwealth since the *Opinion of the Justices* in 150 Mass. 592, that gas companies are *quasi* public corporations performing an important service of a kind so essentially for the general public that cities and towns may be authorized to undertake the service and appropriate money therefor. This opinion was founded upon the proposition that the manufacturing and distribution of gas for the use of the municipality and its citizens is a public service, and hence the business could be undertaken by municipalities as a part of their general governmental functions. It is familiar law that money raised by taxation can be appropriated only for public uses. This public nature of the function of furnishing gas for public and private illumination is reaffirmed in many decisions, not only by way of illustration but by direct determination. The limitations upon the right of a gas company to maintain its pipes in public ways has been frequently adverted to. *Natick Gas Light Co.* v. *Natick,* 175 Mass. 246. *Boston Electric Light Co.* v. *Boston Terminal Co.* 182 Mass. 397. *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566, 570. *Cheney* v. *Barker,* 198 Mass. 356. See *Twin Village Water Co.* v. *Damariscotta Gas Light Co.* 98 Maine, 325; *State* v. *New Orleans Gas Light Co.* 108 La. 67; *Haugen* v. *Albina Light & Water Co.* 21 Ore. 411; *Charleston Natural Gas Co.* v. *Lowe,* 52 W. Va. 662; *Miller* v. *Wilkes-Barre Gas Co.* 206 Penn. St. 254; *People* v. *Union Gas Co.* 254 Ill. 395; *McCarter* v. *Vineland Light & Power Co.* 3 Buch. 703. As is pointed out in *Weld* v. *Edison Electric Illuminating Co.* 197 Mass. 556, the policy which has been developed in Massachusetts respecting the furnishing of artificial light is regulated monopoly. This is an advantage accruing to the defendant beyond and in addition to those enjoyed at the time its charter was granted. A public service or *quasi* public corporation is one private in its ownership but having an appropriate franchise from the State to provide for a necessity or convenience of the general public incapable of being furnished through the ordinary channels of private competitive business and dependent for its exercise upon eminent domain or some agency of government. The character of the functions performed by a gas company, which is reflected in the evolution of the statute law, based upon common experience and the progress of civilization, stamps gas companies as

public in the same sense in which these words are used in reference to street railways and like corporations. On basic principles, it cannot sell or mortgage its property so as to impair in any substantial degree its ability to continue to perform its public service, without legislative consent. *Commonwealth* v. *Smith*, 10 Allen, 448.

It remains to inquire whether the Legislature has granted permission to the defendant to make such a sale as it here contemplated. St. 1886, c. 346, was entitled "An Act in relation to gas companies." Section 4 of that act (now R. L. c. 121, § 13) provided that "no gas company shall transfer its franchise, lease its works, or contract with any person, association or corporation to carry on its works, without the authority of the Legislature." It is necessary in view of this statute to determine the meaning of "franchise" as there employed. Its definition depends upon the connection in which it occurs and the property and corporation to which it is applied. It may have different significations. The power to exist as a corporation with the special privileges and immunities personal to the particular organization is a franchise. This in its nature is not transmissible. The Legislature could not have used the word in this sense in the statute. As applied to a gas company, "franchise" means the right to manufacture and supply gas for a particular locality and to exercise the special rights and privileges in the streets and elsewhere which are essential to the proper performance of its public duty and the gain of its private emoluments and without which it could not exist successfully. *Memphis & Little Rock Railroad* v. *Railroad Commissioners*, 112 U. S. 609, 619. *Vicksburg* v. *Vicksburg Waterworks Co.* 202 U. S. 453, 464.

Without narrating all the facts set out in the record it is enough to say that Stone and Webster acquired all the stock and bonds of the defendant and, for the purpose of avoiding and adjusting certain financial and legal difficulties existing between the defendant, the city of Haverhill and the board of gas and electric light commissioners, organized a new corporation of which they held all the stock and, after making an arrangement approved by the city officers of Haverhill as to price of gas and receiving what purported to be street locations granted to the new corporation, proposed to transfer all the tangible physical properties of

the defendant to the new corporation. Technically the defendant did not propose to sell or transfer to the new corporation its licenses to maintain pipes or to carry on the gas business or anything more than its tangible physical property. It is plain, however, from all the circumstances that what the defendant proposes to do is to transfer all its tangible and physical property to the new corporation for the sole purpose of enabling the latter to exercise all the franchises except that to be a corporation which it has heretofore exercised. The contention is that it does not undertake to sell or transfer any of its franchises but to surrender them. Practically, however, it is a surrender for the sole benefit of the new corporation and for the purpose of enabling it to use all the property and exercise all the franchises (except that to exist as a corporation) which the defendant has exercised heretofore. The policy of the State respecting gas companies having been fully established as that of regulated monopoly, it is plain that the new company except under most extraordinary circumstances could secure no street rights and no license which would enable it to exercise the franchises heretofore exercised by the defendant save by the latter's surrender of all its rights. Looking through form to substance, the proposed arrangement is the wiping out of the defendant and the substitution for it of the new corporation in the exercise of all its public duties, to be accomplished as parts of a single transaction. In essence it is the same as a consolidation or direct sale so far as concerns its practical manifestations in service to the public.

A public service corporation by accepting the rights and privileges conferred by its act of incorporation and by entering into the enjoyment of its franchises undertakes to perform all the public duties required of it. Under the circumstances here disclosed, it cannot surrender its franchises nor disable itself from the performance of its public functions without the consent of the Legislature. *Lumbard* v. *Stearns,* 4 Cush. 60, 62. *Turner* v. *Revere Water Co.* 171 Mass. 329, 334. *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509, 522. *Braslin* v. *Somerville Horse Railroad,* 145 Mass. 64, 67. *Railroad Co.* v. *Brown,* 17 Wall. 445, 450. *Union Trust & Savings Bank* v. *Kinloch Long Distance Telephone Co.* 258 Ill. 202. It is hardly necessary to say that there is nothing at variance with this principle in *Selectmen of Amesbury* v. *Citizens*

*Electric Street Railway,* 199 Mass. 394. It was assumed as the basis of the opinion in *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556, 560, that a gas company could not by any corporate act impair its service and that mandamus would lie against a gas company "for a failure properly to exercise its corporate franchise." So far as there is anything inconsistent with this in *East Ohio Gas Co.* v. *Akron,* 81 Ohio St. 33, we are not disposed to follow it. A surrender of its franchise for the benefit of the new corporation in the way proposed on this record is the equivalent of a transfer of its franchise as those words are used in R. L. c. 121, § 13. The scheme proposed is an evasion of the statute. The Legislature clearly has granted no consent to the transfer but has prohibited it. The surrender of the charter is not a separate matter, but an incident of the plan to circumvent the plain intent of the statute. See *Miller & Lux, Inc.* v. *East Side Canal & Irrigation Co.* 211 U. S. 293; *Southern Realty Investment Co.* v. *Walker,* 211 U. S. 603.

It is argued strongly that *Evans* v. *Boston Heating Co.* 157 Mass. 37, is a controlling authority in favor of the defendant. That case related not to a gas company but to a corporation organized for supplying hot water for heating, cooking and mechanical purposes, an experimental venture which failed. It did not refer to St. 1886, c. 346, and did not need to do so. The opinion does not discuss with thoroughness the public service aspect of gas companies. Hence it is not a binding authority and we are not disposed to extend its reasoning to such companies.

Even if it be assumed that this decision would be a conclusive authority in favor of the defendant but for St. 1886, c. 346, § 4, R. L. c. 121, § 13, as has been shown, we interpret that statute as prohibiting such a sale as is contemplated in the case at bar. The statute as so interpreted is constitutional. It is difficult to define within exact limits the power of the Legislature over public service corporations. A corporation like a gas company, dependent for the conduct of its business upon a license to use in part the highways, (its rights in which are acquired avowedly for a public use,) is something more than affected with "a public interest." Its business is public not only in the sense that it is obliged to sell to the public without discrimination, but it is confessedly public in its nature, because employing an agency purchased at the expense of the tax-

payers and hence solely for public purposes, for the distribution of its product through pipes. Where a corporation, as an essential element of its existence, enjoys and uses privileges in the public streets such as it could not exercise save in the performance of a public duty, and enjoys these privileges as licensee and without any paramount or exclusive right therein, plainly it is subject in this respect to a considerable degree of legislative control and regulation, to be exercised with regard both to the public interests and private property rights of the corporation. A licensee who has exclusive use under legislative permission of a part of a highway for the performance of a public duty, may be forbidden to make, without legislative permission, any sale of property devoted under such circumstances to such uses, involving as it would certain rights in streets. When no contract has arisen, public policy may be changed within reasonable limits in this respect without the violation of any provision of the state or federal constitution. It is not necessary to define with precision under what branch of the authority of the Legislature this may be done, whether in the exercise of the police power in determining who may have special privileges in the public ways, or under the power of amendment, alteration or repeal of corporate charters reserved by R. L. c. 109, § 3, or in the exercise of its general power of control over public service corporations. The statute may be sustained, probably, in the exercise of the general power of the State over its highways. *Fair Haven & Westville Railroad* v. *New Haven,* 203 U. S. 379. *West Chicago Street Railroad* v. *Chicago,* 201 U. S. 506. In any event it is a valid exercise of the reserved power of the Legislature to amend corporate charters. It is well within the principle stated with ample reasoning in *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451; *S. C.* sub nom. *Holyoke Co.* v. *Lyman,* 15 Wall. 500. *Close* v. *Glenwood Cemetery,* 107 U. S. 466. *Berea College* v. *Kentucky,* 211 U. S. 45. *Stanislaus County* v. *San Joaquin & King's River Canal & Irrigation Co.* 192 U. S. 201. *Parker* v. *Metropolitan Railroad,* 109 Mass. 506. *Metropolitan Railroad* v. *Highland Street Railway,* 118 Mass. 290. *Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259. *Brownell* v. *Old Colony Railroad,* 164 Mass. 29. *Revere Water Co.* v. *Winthrop,* 192 Mass. 455, 464. The statute in question does not impair the object for which the

franchise was granted, but rather tends to insure its continuance. Neither the state nor the federal constitution can be invoked "to protect property from a congenital defect." *Madera Water Works v. Madera*, 229 U. S. 454.

<div align="right">

*Decree for the informant.*