# SNELL *v.* CHICAGO.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 242. Submitted February 1, 1894.—Decided March 5, 1894.

The decision by the highest court of a State, that the conveyance by a corporation existing under the laws of the State (and acting in this respect under a statute of the State) to an individual, his heirs, executors, administrators, and assigns, of " all the property of said company,

consisting of the charter and its amendments and franchises," and other enumerated property, and " all the property, goods, and chattels of said company of whatsoever nature or description," passed to him only a life estate in the franchises of the corporation, and that these did not pass to his heirs, presents no question of a Federal nature, but only one as to the extent of an authority given by statute to a corporation to dispose of its franchises.

THIS case came before the court on error to the Supreme Court of the State of Illinois. The record disclosed these facts: On December 21, 1888, the plaintiffs in error, as plaintiffs, filed in the office of the clerk of the Superior Court of Cook County their bill of complaint, seeking to enjoin the defendants, their officers, agents, and servants, from removing, or attempting to remove, a certain toll-gate on Milwaukee Avenue, in the city of Chicago, and from interfering with the plaintiff's collection of tolls thereat. The bill set forth that on February 10, 1849, the general assembly of the State of Illinois passed an act to incorporate the Chicago Northwestern Plank Road Company, certain sections of which were quoted. It is unnecessary to refer to these sections in detail; it is enough to say that they provided for the incorporation of a company to construct a plank road, and described the various powers and privileges given to such corporation. The bill then referred to an act of the general assembly, dated February 12, 1849, Laws of 1849, Private Laws, p. 57, entitled " An act to construct a plank road," etc., the twenty-first and twenty-second sections of which, quoted in the bill, purported to incorporate the Northwestern Plank Road Company, the incorporators of which, as appeared from section 21, had a license from the county commissioners' court of Cook County to construct a plank road from the city of Chicago to Oak Ridge, and from thence to Wheeling and the north line of said county. It then quoted the act of the general assembly of the State of Illinois of date March 1, 1854, entitled an act to incorporate the Northwestern Plank Road Company. Laws of 1854, 2d sess., 224. This act commences with a preamble which, referring to the act of February 12, 1849, says that doubts exist as to whether by the twenty-first, twenty-second,

and twenty-third sections of said act the Northwestern Plank Road Company was duly incorporated, and therefore in the first section in terms incorporates the Northwestern Plank Road Company, and, by the second section, grants to it the powers and privileges, rights and duties, contained in the sections quoted from the earlier act of 1849. The allegation is that by virtue of these several acts the Northwestern Plank Road Company became duly incorporated and organized as a corporation, and proceeded to and did prosecute and complete the construction of the road under the powers and franchises granted. The bill further set forth that on February 15, 1865, another act was passed by the general assembly of the State of Illinois, Laws of 1865, (Private,) p. 115, which act was set forth in full, and the material sections of which are as follows:

"SEC. 3. The president, by the advice and direction of a majority of the stockholders, may sell to the county of Cook the franchise, the property, and immunities of said company, or to any other party or parties, and thus dissolve said company, and divide the avails amongst the stockholders.

"SEC. 4. That the board of supervisors of Cook County may purchase such franchise, property, and immunities, and, upon the order of said board, the clerk of said county shall proceed to purchase and receive the deed of title to the same, and should said county fail to purchase the same, any person or persons may purchase the same, and thereby make the same private property.

"SEC. 5. The deed of the president of said company to the said county of Cook, or to any other party purchasing, shall be a good and lawful title to the same; *provided*, always, that all the debts and liabilities of said company shall be paid; *provided*, *further*, that the purchaser or purchasers of said franchise and road shall be bound by all the obligations said Northwestern Plank Road Company is by its charter, and shall enjoy all the rights and privileges enjoyed by said company, and no more."

On August 5, 1870, the Northwestern Plank Road Company made a deed to Amos J. Snell. This deed, after reciting the

incorporation under the act of March 1, 1854, quoting sections 3 and 5 of the act of February 15, 1865, and reciting a meeting of the stockholders on January 5, 1866, closes with this resolution, passed at such meeting, and this granting clause:

"*Resolved by the stockholders of this Company*, That Thomas Richmond, president, be authorized to sell the plank road, toll-houses, and other property belonging to the company, with the franchise and all its rights and privileges, and give a deed of the same to the purchaser for such sum and upon such conditions as he shall deem advisable;

"And whereas the said plank road company is entirely free from debt, now, therefore, I, Thomas Richmond, president of the Northwestern Plank Road Company, for and in consideration of the sum of twenty thousand dollars ($20,000) to me in hand paid by Amos J. Snell, of Jefferson, in the county of Cook and State of Illinois, do hereby sell, transfer, convey, and set over to the said Amos J. Snell, his heirs, executors, administrators, and assigns, 'all the property of said company, consisting of the charter and its amendments and franchises, the right of way, the grading, the planking, ditches, bridges, and drainages, the toll-houses, gates, teams, implements of work, and being the plank from the old city limits of Chicago aforesaid to the nine-mile post, together with all the property, goods, and chattels of said company of whatsoever nature or description;'

"To have and to hold unto the said Amos J. Snell, his heirs, executors, administrators, and assigns, forever.

"In witness whereof the said Thomas Richmond, as president, has hereunto signed his name and affixed the seal of the said Northwestern Plank Road Company this fifth day of August, A.D. 1870.

"[Corporate seal of the Northw. P. R. R. Co.]

"THOMAS RICHMOND,
"*Pres't N. W. P. R. R. Co.*"

This deed was duly recorded. The bill also alleges that from that time until his death Snell continued in the owner-

ship of said property and in the actual and exclusive possession, control, and enjoyment thereof, and the undisturbed exercise of all the franchises, rights, and powers which were conferred upon the corporation by said enactments. At this time the plank road, or so much thereof as was constructed, was outside of the corporate limits of the city of Chicago, and during such time Snell erected a toll-gate and toll-house on the southeast corner of Milwaukee Avenue and Fullerton Avenue, at which place the tolls were collected. It is further averred that on February 8, 1888, Snell died; that the present plaintiffs are his personal representatives and heirs; that on December 10, 1888, the defendants commenced proceedings for the purpose of removing such toll-gate, the territorial limits of the city having been duly extended so as to include a part at least of the toll-road and the part on which the toll-gate was situated.

To this bill a demurrer was filed, which, on February 6, 1890, was sustained, and, the plaintiffs electing to stand by the bill, a decree of dismissal was entered. On appeal to the Supreme Court of the State the decision of the Superior Court was, on the 14th day of May, 1890, sustained, and the decree of dismissal affirmed. 133 Illinois, 413.

*Mr. Frank J. Crawford* and *Mr. Sidney Smith* for plaintiffs in error.

*Mr. Harry Rubens* and *Mr. Edward Roby* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

By this writ of error we are called upon to review the decision of the Supreme Court of the State of Illinois, and it is insisted that that decision is in conflict with the clause of the first section of the Fourteenth Amendment to the national Constitution, which declares that "no State shall deprive any person of life, liberty, or property without due process of law," and of the tenth section of the first article of that Constitution,

which prohibits a State from passing any law impairing the obligations of contracts.

It is the settled law of this court that to give it jurisdiction of a writ of error to a state court it must appear affirmatively not only that a Federal question was presented to that court for decision, but also that the decision of the question was necessary to the determination of the cause, and that it was actually decided adversely to the party claiming a right under the Federal laws or Constitution; or that the judgment as rendered could not have been given without such decision. *Miller's Executors* v. *Swann*, 150 U. S. 132; *Eustis* v. *Bolles*, 150 U. S. 361, and cases cited therein.

Guided by the rule thus laid down and long established, we turn to the record, including therein the opinion of the Supreme Court of the State, to see what in fact was decided. From such inspection it is obvious that there was no decision adverse to the rights vested in the Northwestern Plank Road Company by its charter. On the contrary, the clear concession in the opinion of the Supreme Court was that that company had by its charter a valid and exclusive franchise in respect to the toll-road, including therein the right to take tolls, and to erect and maintain a toll-gate therefor. All the contract rights which it can be claimed passed by the charter to the plank road company were conceded to have passed to it, and the matter which was determined by that court, and upon which its decision rested, was that the franchises, thus vested in the corporation, did not pass by the deed made under the authority of the act of 1865 to Snell and his heirs in perpetuity. It was not denied that those franchises passed to Snell by the deed of August 5, 1870, but the ruling was that such conveyance did not vest in the grantee the franchises as a matter of private property, to pass by inheritance to his heirs.

In order that there may be no misunderstanding of the rulings of the Supreme Court we quote at length from its opinion (pp. 430–432):

"By the act of 1854, Gray, Filkins, Richmond, and their associates became a corporate body, with the right of perpetual succession, etc. This was the franchise of the corpo-

rators. By the same act the corporate body received the right to construct and maintain a toll-road, and to build toll-houses, and collect tolls. These were the franchises of the corporation. The former franchise, that is to say, the franchise to be a corporation, cannot be transferred without express provision of law pointing out the mode in which the transfer is to be made. *Coe* v. *The Columbus P. & I. R. R. Co.*, 10 Ohio St. 372; *Memphis R. R. Co.* v. *Commissioners*, 112 U. S. 609. The act of 1865 authorizes the sale of 'the franchise, the property, and immunities' of the plank road company, and specifies that such transfer is to be made by deed of the president. If the word 'franchise' as here used is broad enough to include the franchise to be a corporation, with the power of perpetual succession, even then, Snell was not thereby made a corporation under the old charter. He was merely vested with the 'right to organize as a corporation,' (*Memphis R. R. Co.* v. *Com'rs, supra,*) but such organization never took place. Neither he nor his heirs or representatives are claiming as the corporate successors of the plank road company. The appellants are claiming as the heirs of Snell the individual.

"'The franchise of becoming and being a corporation in its nature is incommunicable by the act of the parties and incapable of passing by assignment.' (*Memphis R. R. Co.* v. *Com'rs, supra.*) If Snell in his lifetime was the owner of such franchise by express legislative grant, he could not assign it and it could not descend to his heirs. He failed to use it for the purpose of effecting any corporate organization, and it died with him. Even if this were not so, his failure to effect said organization within ten days after the constitution of 1870 went into effect rendered it impossible, under section 2 of article 11 of that constitution, to give any validity to an organization made after the lapse of such period of ten days.

"If the franchises designated as those which belong to the corporation as distinguished from the corporators passed to Snell by the transfer, and if he had the right to maintain the toll-houses transferred to him and to collect the tolls therefrom, did such franchise and right pass to the appellants at his death? The second proviso of section 5 of the act of 1865

is as follows: 'Provided further, that the purchaser or purchasers of said franchise and road shall be bound by all the obligations said Northwestern Plank Road Company is by its charter, and shall enjoy all the rights and privileges enjoyed by said company and no more.' This provision is to be strictly construed in favor of the public and against the grantee of the privileges in question. (Angell on Highways, section 357; 1 Morawetz on Priv. Corp. sec. 323; *Stormfeltz* v. *The Manor Turnpike Co.*, 13 Penn. St. 555.) The person who is to 'enjoy all the rights and privileges enjoyed by said company' is stated to be the purchaser of the franchise and road. It is not stated that the purchaser *and his heirs and* assigns shall enjoy such rights and privileges. If it had been the intention of the legislature that the *heirs* of the purchaser should succeed to the privilege of collecting tolls and maintaining toll-gates, it would have been so specified.

"The dissolution of the corporation did away with the right of *perpetual succession* which attached to the corporate body. By neglecting to organize a corporation with such privilege of perpetual succession, if the power to do so passed to him, Snell failed to preserve the element of perpetuity. But if the right to collect tolls and maintain toll-houses descended to his heirs, and by consequence became inheritable by the heirs of such heirs, then there was a continuation of the perpetuity which has been abrogated by the dissolution of the corporation. It is true that the deed made by the president of the corporation to Snell conveys to him, 'his heirs, executors, administrators, and assigns,' but the question is not what the language of the deed was, but what the legislature authorized to be put into the deed."

There can be no mistake as to the scope of this decision. It is that the franchises vested in the plank road corporation, though passing to Snell by the deed, passed to him and not to him and his heirs, and that he took by such deed only a life estate. But in this is presented no question of a Federal nature, but only of the extent of an authority to dispose of its franchises given by a statute to a corporation. It is assumed that the charter was a valid and binding contract, and

that by it certain franchises were vested in the Northwestern Plank Road Company as its absolute property, beyond the power of the State to arbitrarily retake. After the grant of this charter, and after the full investiture of the corporation with these franchises, an act was passed giving it authority to dispose of them, and the matter which was determined by the Supreme Court was as to the extent of the authority thus conferred. But in this there is no matter of contract. The State never contracted with the plank road company that it should have the power to transfer its franchises; nor with these plaintiffs that their intestate and ancestor should acquire an absolute title to these franchises with an indefeasible estate of inheritance. The mere grant of franchises to a corporation carries with it no power of alienation. On the contrary, the general rule is that, in the absence of express authority, they are incapable of alienation. And many cases have arisen in which an attempted alienation by the corporation has been declared by the courts to be void, as divesting it of the power to discharge the duties imposed by the charter. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Pennsylvania Railroad Co.* v. *St. Louis, Alton &c. Railroad Co.*, 118 U. S. 290; *Oregon Railway* v. *Oregonian Railway*, 130 U. S. 1; *Central Transportation Co.* v. *Pullman Car Co.*, 139 U. S. 24. In the original act of incorporation no power of alienation was given to the plank road company. The only authority is found in the act of 1865, and that is a mere grant of a permission to sell. Determining the extent of that permission determines no question of contract, and presents no other matter of a Federal nature. If it be true, as decided by the Supreme Court, that only a life estate passed to Snell, then the plaintiffs have no interest in the franchises, and the demurrer to the bill was properly sustained. This, therefore, is a pivotal question, and having been decided adversely to the plaintiffs, and in it there being no matter of a Federal nature, it follows that this court has no jurisdiction, and the case must be

*Dismissed.*